1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                         EASTERN DISTRICT OF CALIFORNIA

10   K.C.T., a minor, by through his          )   1:09-cv-2235 GSA
     Guardian  ad Litem, Taneshi Madkins,     )
11                                            )
                        Plaintiff,            )   ORDER REGARDING PLAINTIFF'S SOCIAL
12                                            )   SECURITY COMPLAINT
                  v.                          )
13                                            )
     MICHAEL J. ASTRUE, Commissioner          )
14   of Social Security,                      )
                                              )
15                      Defendant.            )
                                              )

16

17                            **BACKGROUND**

18          Plaintiff K.C.T., by and through his guardian ad litem Taneshi Madkins (hereinafter

19   referred to as "Ms. Madkins"), seeks judicial review of a final decision of the Commissioner of

20   Social Security ("Commissioner") denying his application for child's supplemental security

21   income, pursuant to Title XVI of the Social Security Act.  The matter is currently before the

22   Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary

23   S. Austin, United States Magistrate Judge.[1]

24   ///

25   ///

26   ///

27

28          [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 11 & 12.

                                            1

1

## FACTS AND PRIOR PROCEEDINGS[2]

2      Ms. Madkins filed an application for benefits on July 14, 2006.  AR 68, 74, 101.  After

3  being denied both initially and upon reconsideration, Ms. Madkins requested a hearing before an

4  Administrative Law Judge ("ALJ").  AR 68, 74, 93.  ALJ Christopher Larsen held a hearing on

5  January 12, 2009. AR 32-44 .  The ALJ issued a decision denying benefits on April 6, 2009.  AR

6  14-25.  On May 1, 2009, the Appeals Council denied review.  AR 2-4.

7      **Hearing Testimony**

8      The hearing was held on April 3, 2008, in Fresno, California.  AR 32.  K.C.T was present

9  and was represented by attorney Geoffrey L. Hayden.  AR 34.  K.C.T's father, Mr. Thurman

10  testified at the hearing.  AR 32-44.

11      Mr. Thurman testified that Plaintiff, who had no problems at birth, had speech difficulties

12  that made him difficult to understand.  AR 38-40.  He reported that Plaintiff receives average

13  grades in school and attends regular classes. AR 40, 43.  He said that Plaintiff's hearing was

14  normal but people, other than his parents, could not understand him.  AR 42-43.  He testified that

15  Plaintiff was in the second grade, that he had friends, he can count change, and he can tell time

16  on a digital clock. AR 42.  He stated that Plaintiff attended speech counseling but without

17  noticeable improvement or worsening. AR 42.

18      **Medical Record**

19      The entire medical record was reviewed by the Court.  Summaries of the relevant reports

20  and treatment notes are provided below.

21      *The Opinion of Speech Pathologist, Terri Plake*

22      On  October 11, 2006, Terri Plake, M.C.D., a speech and language specialist, evaluated

23  Plaintiff at the age of four in connection with his disability application. AR 145-48.  Ms. Plake

24  noted that plaintiff's grandmother accompanied Plaintiff to the evaluation. AR 145. She observed

25  that plaintiff was cooperative during the examination and demonstrated fluent speech throughout.

26  AR 146. Ms. Plake also found Plaintiff's conversational intelligibility to be at sixty percent

27

28
─────────────────
      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

2

1  intelligible but noted that it improved with repetition. AR 146. She concluded that Plaintiff's

2  language skills were in the low normal range and that with articulation therapy "the progress for

3  complete remediation of [Plaintiff's] poor articulation [was] excellent." AR 147.

4      *The Opinion of Psychologist, Kimball Hawkins*

5      On October 16, 2006, Kimball Hawkins, Ph.D., a psychologist, evaluated Plaintiff.  AR

6  149-151.  Dr. Hawkins observed that Plaintiff was not easy to understand and had poor

7  articulation. AR 150. Dr. Hawkins summarized Plaintiff's abilities as follows:

8      • Communication Domain: Plaintiff used complex prepositions, asked questions when

9      speaking, and spoke in short sentences but was not easy to understand, did not state both

10      his first and last name when asked, and did not speak without sound substitutes (AR 150).

11      • Daily Living Skills: Plaintiff reported that he could dry himself with a towel, take care

12      of his toileting, answer the phone, call someone to the phone, and dress himself with help,

13      but he did not put his shoes on the correct foot and had trouble with zippers and buttons

14      (AR150).

15      • Socialization: Plaintiff said he had preferred friends and was able to label some

16      emotions; he could also engage in some make believe and pretend play but did not share

17      things without being told and did not follow rules without being reminded.  (AR 151).

18      • Motor Skills: Plaintiff reported that he could hop on one foot, climb on high equipment,

19      walk up and down stairs, and open and close scissors with one hand; he could cut along a

20      line with scissors (AR 151).

21      Dr. Hawkins diagnosed Plaintiff with a speech disorder and found Plaintiff was at risk for

22  a learning disorder.  AR 151. Dr. Hawkins recommended speech therapy and ongoing

23  educational programs. AR 151.

24      *The Opinion of Dr. G.W. Bugg*

25      On November 22, 2006, G.W. Bugg, M.D., assessed the evidence on behalf of the State

26  disability service, describing the evidence as follows:

27      • Acquiring and Using Information: Plaintiff is not easily understood and can not explain

28      things well;

3

1    • Attending and Completing Tasks: Plaintiff is hyper and stays busy doing "bad things

2       while playing;"

3          • Interacting with Others: Plaintiff does not share or follow rules without a reminder;

4          • Moving about and Manipulating Objects: Plaintiff does not cut along a line with

5          scissors (AR 152-54).

6    Dr. Bugg concluded that Plaintiff did not meet, equal, or functionally equal any listing.  AR 154.

7    He also determined that Plaintiff had less than marked limitations is acquiring and using

8    information, and interacting and relating to other, moving about and manipulating objects, caring

9    for himself.  Dr. Bugg also opined K.C.T. and no limitation with regard to attending and

10   completing tasks as well as health and physical well being.  AR 156-157.

11            *The Opinion of Roberta Evans-Joseph, Speech and Language Pathologist*

12            On January 19, 2007, Roberta Evans-Joseph, M.S., a speech and language pathologist

13   with the Bakersfield City School District, evaluated Plaintiff, who was then about four and a half

14   years old.  AR 161-62. Testing showed auditory comprehension in the range of a three to four

15   year old and communication at the level of a three-year, nine-month old, resulting in an overall

16   score of that of a three and a half year old.  Testing also showed that Plaintiff initiated

17   conversation, stayed on topic, and engaged in a variety of speech acts, including requests,

18   questions, and comments.  AR 162. Ms. Evans-Joseph found that Plaintiff's non-verbal

19   components, including eye contact and physical proximity were appropriate.  AR 162. She

20   concluded that a severe discrepancy existed between Plaintiff's chronological age and speech and

21   language performance with language delays in auditory comprehension of about one year below

22   his chronological age AR 162.  Specifically, at the time of the assessment K.C.T. was four years

23   and seven months old, and his auditory comprehension was in the 3 to 4 year range; his

24   expressive communication was in the range of a 3.9 year-old.  His total language score was that

25   of a 3.5 year old.  AR 162.

26                                   **SCOPE OF REVIEW**

27            Congress has provided a limited scope of judicial review of the Commissioner's decision

28   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

1   the Court must determine whether the decision of the Commissioner is supported by substantial

2   evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla,"

3   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

4   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

5   reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

6   401. The record as a whole must be considered, weighing both the evidence that supports and

7   the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

8   995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

9   apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988).

10  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

11  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

12  substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

13  Cir. 1987).

## **REVIEW**

15      The childhood disability standard was changed by the Personal Responsibility and Work

16  Opportunity Act of 1996. *Pub. L. No. 104-193, § 211, 110 Stat. 2105 (1996)*, amending 42

17  U.S.C. § 1382c(a)(3)(A*)*. The amendment provides:

18      [A]n individual under the age of 18 shall be considered disabled . . . if that individual has
        a medically determinable physical or mental impairment, which results in marked or
19      severe functional limitations, and which can be expected to result in death or which has
        lasted or can be expected to last for a continuous period of not less than 12 months.
20
    42 U.S.C. § 1382c(a)(3)(C)(I).
21
        To apply the new statutory standard, the Commissioner now uses a three-step sequential
22
    evaluation procedure for determining whether a child's impairments result in  marked and severe
23
    functional limitations and is therefore disabled. 20 C.F.R. § 416.924(b)-(d) (2001). The
24
    amendment eliminated the fourth step in the disability analysis: determining whether the child
25
    had an impairment or impairments of comparable severity to that which would disable an adult.
26
    This new standard applies to new claims filed on or after August 22, 1996, and to new claims not
27
    yet finally adjudicated on that date. 42 U.S.C. § 1382c. A claim is not finally adjudicated if an
28

1   administrative or judicial appeal was pending on or after that date regarding a claim that has been

2   denied in whole. *Id.; see Jamerson v. Chater*, 112 F.3d 1064, 1065 n.1 (9th Cir. 1997).

3        The relevant inquiry at step one is whether the child is engaged in substantial gainful

4   activity. 20 C.F.R. § 416.924(b). If not, step two requires the fact finder to determine whether

5   the child has a medically severe impairment or combination of impairments. 20 C.F.R. §

6   416.924(c). Plaintiff bears the burden of demonstrating a severe impairment. 20 C.F.R. §

7   416.924. If the impairment is a "slight abnormality or a combination of slight abnormalities that

8   cause no more than a minimal functional limitation," the Commissioner will find that the child

9   does not have a severe impairment and therefore is not disabled. 20 C.F.R. § 416.924(c).

10       Step three requires determining whether the severe impairment meets or equals in severity

11   any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §

12   416.924(d). If such an impairment exists, the Commissioner must find the child disabled. *Id.* If

13   the child's impairment does not meet or medically equal any listing, then the Commissioner must

14   determine if the limitations caused by the impairment functionally equal a listing in the Listing of

15   Impairments. *Id.* To do so, the Commissioner will assess all of the functional limitations caused

16   by the child's impairments in six domains: (1) acquiring and using information; (2) attending and

17   completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

18   objects; (5) caring for self; and (6) health and physical well being. *See* 20 C.F.R. § 416.926a(a)-

19   (b). To functionally equal a listing, the impairments must result in marked limitations in two

20   domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

21       ***The ALJ's Findings***

22       After applying the childhood disability standard, the ALJ found that K.C.T.: (1)  did not

23   engage in any substantial gainful activity at any time relevant to the decision because he was a

24   school-age child at the time of filing the claim; (2) has a severe impairment of speech articulation

25   disorder; (3) however, the severe impairment did not medically or functionally equal the listings.

26   AR 17.

27       More specifically, the ALJ found K.C.T.  had "no limitation" for completing tasks and

28   health and physical well-being. AR 20, 24.  He also found "less than marked" limitations for

1  acquiring and using information, interacting and relating with others, moving about and

2  manipulating objects, caring for self, and health.  AR 19, 22-24.  Because K.C.T. did not have

3  two "marked" limitations in any of the domains, or one "extreme" limitation in a single domain,

4  the ALJ determined that K.C.T was not disabled.  AR 24-25.

5  **DISCUSSION**

6    Plaintiff argues that the ALJ does not offer any legally sufficient reasons to reject the

7  testimony of K.C.T's father.  Specifically, Plaintiff argues the ALJ's decision is improper

8  because the medical records document that K.C.T. has a speech impairment, and K.C.T's father

9  described limitations regarding K.C.T's ability to articulate his speech, yet the ALJ failed to

10  consider the father's testimony.  Doc. 17 at pg. 8.  Defendant contends that the ALJ did consider

11  the father's testimony, but that K.C.T's speech had improved with therapy and the medical

12  evidence did not support a finding of disability.  Therefore, the ALJ's analysis was proper. Doc.

13  18 at pgs. 6-7.

14    Lay witness testimony by family members and friends who have the opportunity to

15  observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider.

16  *Sprague v. Brown*, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see *Dodrill v. Shalala*, 12 F.3d 915,

17  919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is suffering or merely

18  malingering.  While this is particularly true of witnesses who view the claimant on a daily basis,

19  the testimony of those who see the claimant less often still carries some weight").  To reject lay

20  testimony, an ALJ must give reasons "germane to each witness" for doing so. *Dodrill v. Shalala*,

21  *12 F.3d at 919*. Thus, the ALJ must give germane reasons for rejecting Mr. Thurman's

22  testimony.

23    After summarizing Mr.  testimony, the ALJ notes the following with regard to credibility:

24     After considering the evidence of record, I find the [claimant's] medically
   determinable impairments could reasonably be expected to produce the alleged

25     symptoms.  But the statements concerning the intensity, persistence and limiting
   effects of [claimant's] symptoms are not credible to the extent they are

26     inconsistent with finding that the claimant does not have an impairment or
   combination of impairments that functionally equals the listings for the reasons

27     explained below...
   AR 18.

28

1    To support this conclusion, the ALJ provides a very detailed analysis of all of the medical

2  records as well as school assessments.  AR 18-24.   In this case, however, the ALJ also relied on

3  the testimony of K.C.T's father, as well as evaluations from speech and language pathologists, a

4  doctor, and a psychologist, which assessed Plaintiff's physical, educational, and social abilities.

5  AR 16-19.

6    Plaintiff argues the ALJ did not cite to one single legally sufficient reason to reject the

7  testimony.  However, other than making this broad assertion, Plaintiff's argument lacks any

8  substantive analysis.  A review of the ALJ's decision indicates that the ALJ did not reject the

9  testimony of the lay witness; rather he relied on it, along with the medical and other evidence, to

10  find that Plaintiff was not disabled. This is illustrated throughout the ALJ's findings.

11    For example, the ALJ observed that Ms. Plake assessed Plaintiff's intelligibility at sixty

12  percent, found that his intelligibility improved with repetition, and concluded that, with speech

13  therapy, his prognosis was excellent. AR 18-19, 21, 146. The ALJ also considered the findings of

14  Dr. Hawkins, who reported on Plaintiff's abilities in a variety of areas. AR 18, 21-23, 150-51. Dr.

15  Hawkins's observations, as reported by the ALJ, included that Plaintiff used complex

16  prepositions, asked questions when speaking, and answered the phone. AR 18, 21-23, 150-51.

17  The ALJ additionally relied on the findings by Dr. Bugg, who concluded that Plaintiff did not

18  meet, equal, or functionally equal any of the listings.  AR 18, 154.  Finally, ALJ also noted that

19  Ms. Evans-Joseph observed that Plaintiff engaged in a variety of speech acts and had appropriate

20  non-verbal components but found Plaintiff's auditory comprehension at about one year below his

21  chronological age. AR 18, 21, 162.

22    In conjunction with the medical and other evidence, the ALJ discussed Plaintiff's father's

23  testimony in great detail, reciting Plaintiff's father's statements that Plaintiff had perfect hearing

24  but was difficult to understand and had not improved or worsened with speech therapy.  AR 17.

25  The ALJ also recounted Plaintiff's father's statements that Plaintiff was in mainstream classes,

26  received average grades, had friends, could count change, and could tell time on a digital clock.

27  AR 18. He noted that Plaintiff's father believed that Plaintiff was disabled because people

28  unfamiliar with him could not understand him. AR 18. The ALJ did not reject any of this

1  testimony; instead he relied on it however the ALJ found that such evidence did not support a

2  finding of disability.  Plaintiff cites no authority for his position that a child who is difficult to

3  understand is entitled to disability benefits. AR 18. While the ALJ recognized that Plaintiff's

4  articulation disorder might limit Plaintiff's ability to communicate and socially interact, he

5  concluded that the medical findings, along with Plaintiff's father's testimony regarding Plaintiff's

6  abilities, schooling, and social interactions, supported a finding that Plaintiff had no marked

7  limitations and did not meet, equal, or functionally equal any listing. AR 17-24. Thus, the only

8  aspect of Plaintiff's father's testimony that the ALJ rejected was the father's assertion that

9  Plaintiff was disabled, which is a legal conclusion reserved for the ALJ AR 17- 24. 20 C.F.R. §

10  416.927(e) (stating that the Commissioner is responsible for making a determination as to

11  whether a claimant meets the statutory definition of disability); *see Magallanes v. Bowen*, 881

12  F.2d 747, 751 (9th Cir. 1989) (stating that an opinion as to the ultimate issue of disability is not

13  conclusive); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (observing that

14  "[l]ay testimony as to a claimant's symptoms is competent evidence which the [Commissioner]

15  must take into account") (emphasis in original)(citation omitted)).  Accordingly, Plaintiff's

16  argument has no merit, and substantial evidence supports the ALJ's decision.

17      In sum, the ALJ conducted a thorough review of the entire record.  He considered

18  Plaintiff's father's testimony as evidenced by the summary and analysis in the opinion.

19  Thereafter the ALJ made a disability determination which is supported by substantial evidence

20  and is free of legal error.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## **CONCLUSION**

2        Based on the foregoing, the Court finds that the ALJ's decision is supported by

3   substantial evidence in the record as a whole and is based on proper legal standards.

4   Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

5   Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

6   favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff

7   K.C.T, by and through his Guardian ad Litem Taneshi Madkins.

8        IT IS SO ORDERED.

9   **Dated:    March 8, 2011**                    _____ /s/ **Gary S. Austin**          _____
                                                        UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28